City of Louisville v. Michels.

·CASE 61—ACTION BY JOHN MICHELS V. CITY OF LOUISVILLE FOR PER-
SONAL INJURY CAUSED BY PROJECTING LIMB OF SHADE TREE OVER-
HANGING STREET.—JAN. 21.

# City of Louisville v. Michels.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   AFFIRMED.

MUNICIPAL CORPORATIONS—STREET—LOW LIMBS OF TREES—EMPLOYE
OF CITY—CONTRIBUTORY NEGLIGENCE—PLEADING—LIABILITY OF
CITY.

Held:  1. The fact that the appellee was the servant of the city,
driving a patrol wagon, did not impose on him the duty to neg-
ative contributory negligence by averring in his petition that
he did not know the condition of the street, where he was in-
jured, as it was no part of his duty to examine the streets and
report upon their condition.

2. A city is liable under its duty to keep its streets in good condi-
tion, for injury to one, who, without contributory negligence,
is driving a wagon along a street, and is thrown therefrom by
coming in contact with a large limb of a tree projecting over
the street dangerously low.

HENRY L. STONE, CITY ATTORNEY, FOT APPELLANT.

Our contention is:

1. Appellee's petition is defective and did not authorize a ver-
dict and judgment against appellant.   There is no allegation
therein that the appellee did *not* know of the condition of the
tree in the public way where he got hurt, or have equal oppor-
tunities of knowing the same as appellant.

2. The court erred in not giving to the jury a peremptory
instruction to find for the appellant.    Even if appellee's peti-
tion had not been fatally defective in the respect mentioned,
still the evidence on the trial introduced by appellee, showed
conclusively that he was guilty of contributory negligence, and
not entitled to recover any damages.

3. The court erred in refusing to give the instructions offered
by appellant and in giving instructions numbers one and two of
its own motion.

The court, by its instructions in substance, told the jury that
it was their duty to find for appellee, if the city knew that

the limb was dangerous to persons using the street or could have known it by ordinary care, unless appellee, by negligence on his part contributed to cause or bring about the injury of which he complained and that he would not have been hurt but for his own negligence, if there was any.   These instructions were highly prejudicial to the rights of appellant.

### AUTHORITIES CITED.

1. Mellott v. Louisville & Nashville Railroad Co., 19 R., 379; Bogenschutz v. Smith, 84 Ky., 330; Williams v. Louisville & Nashville Railroad Co., 64 S. W., 728; 2 Thompson Negligence, p. 108.

2. Bailey on Master's Liability for Injuries to Servants, 165; Compton v. Inhabitants of the Town of Revere, 60 N. E., 931; City of Columbus v. Griggs, 10 Am. Neg. Rep., 28; Samples v. City of Atlanta, 95 Ga., 110; 22 S. E., 135; Yager's Admr. v. Receivers of A. M. & O. R. R. Co., 88 Fed. Rep., 773; Tuttle v. Detroit. Grand Haven & Milwaukee Railroad Co., 120 U. S., 189; Dertoit Crude Oil Company v. Gable, 94 Fed. Rep., 73; Southern Pac. Co. v. Seley, 152 U. S., 152; R. R. Co. v. McDade, 135 U. S., 570; Bush v. Grant, 61 S. W., 363; Mellott v. Louisville & Nashville Railroad Co., 19 R., 379; Thompson on Negligence, vol. 2, p. 1008.

AUGUSTUS J. BIZOT and O'NEAL & O'NEAL, for appellee.

1. We contend that, so far as this injury is concerned, the relation of master and servant did not exist, because, although appellee was a servant in one sense, as a driver of patrol wagon, he was not a patrolman, and it was not part of his duty to inspect the streets or to observe obstructions therein.

2. The evidence shows that while the appellee had previously driven under this limb in a low uncovered wagon, he did not know or suspect it to be dangerous to a covered wagon which he was driving when he was injured, but that the city had previously been notified that it was dangerous to a covered wagon like the one then being used by appellee.

3. But even if appellee was guilty of contributory negligence, which we deny, it was proper for the case to be submitted to the jury under a proper instruction of the court which was done.

### AUTHORITIES CITED.

Bogenschutz v. Smith, 84 Ky., 330; Williams v. L. & N. R. R. Co., 23 Rep., 1124; Mellott v. L. & N. R. R. Co., 19 Rep., 379; L. & N. R. R. Co. v. Rains, 15 R., 423; Gerke Brewing Co. v. Busse, 11 Rep., 322; L. & N. R. R. Co. v. Breeding, 13 Rep., 397; N. N. & M. V. Co. v. Dentzell, 19 Ky., 42.

OPINION OF THE COURT BY JUDGE PAYNTER—AFFIRMING.

The appellee for some years had been a driver of a patrol wagon in the city of Louisville. Previous to August 23, 1899, he had driven an uncovered wagon. On that date he was driving a patrol wagon to which were attached two horses. It had been used at the Central Police Station, but had recently been sent to the station where appellee was located. While driving on Main street the top of the wagon collided with the limb of a shade tree about six or eight inches in diameter, which projected over the street so low as to come in contact with the top of the wagon, which caused the horses to break the kingbolt, thus detaching the fore wheels from the bed of the wagon, and precipitating him from his seat to the street, resulting in such serious injuries to his leg that after ten months of great suffering it became necessary to amputate it to save his life, and, as a result of the fall, his left arm was seriously injured. He sought to and did recover judgment against the city upon the grounds that the shade tree, being within the corporate limits of the city of Louisville, was permitted to grow and branch over the street in such a manner as rendered it dangerous to persons driving along the street, and that the city knew of its condition, and failed, after reasonable delay, to remove it. The evidence tended to show that Michels' duties required him to drive at a considerable rate of speed to and from different parts of the city in obedience to demands of the police department for the purpose of conveying prisoners to and from the police stations, and that while driving along the street, and passing a wagon loaded with tobacco stems, drawn by four mules, the top of the patrol wagon, as above stated, was struck by the projecting limb. The case was prepared and tried upon the idea that the appellee was entitled to recover as would

have been any citizen driving over the street and who had received an injury under the circumstances detailed.

It is urged upon the part of the city that, as Michels was a servant in its employ, he had an equal opportunity of knowing the condition of the street as did the master, and that he should have negatived contributory negligence in his petition by averring that he did not know the condition of the street, and did not have an equal opportunity with the master of knowing its condition. It was no part of the duty of a driver of a patrol wagon to examine the streets, or report their condition. In the discharge of his duties it necessarily required him to drive hastily over the streets to such points as the demands of the police department required. It can not be said that, because his business required him to drive over the streets, his opportunities were as good as the master's for knowing their condition. It is the duty of the city to have the streets constructed, and keep them in repair; and it is the business of the policemen of the city to discover and report any defects in them, or dangerous obstructions over them. If there had been a defect in the harness used upon the horses, or a defect in the wagon which he drove, of which he was aware, or could have been aware by the exercise of ordinary care, and from a failure to exercise it the injury resulted to him, then the principle invoked in behalf of the city, which is part of the law of master and servant, would apply. It was no more the duty of the driver of a patrol wagon to inspect the streets over which he drove than it was the duty of a brakeman to inspect the track of a railway, or know that it has been safely constructed. It is the duty of a municipal corporation to maintain its streets in good condition and repair, so as to keep them reasonably safe for the traveling public. This imposes the duty of

keeping them clear of obstructions which are dangerous to persons using them, and for failure to do so it is liable in damages to one who may be injured in consequence of such obstructions. This limb was six or eight inches in diameter, and necessarily it had been an obstruction for some years. Besides, the testimony in this case showed the city's attention had been called to the danger of permitting it to remain in its condition; in fact it appeared that persons had been previously hurt, ·or had come in contact with it while using the street, and the city's attention had been called to these facts.

The court below gave the following instructions: "It is the duty of the defendant, the city of Louisville, to exercise ordinary care to keep its highways in a reasonably safe condition for public use, and if you shall believe from the evidence that at the time mentioned in the petition—that is, August 23, 1899—at the point on Main street between Seventeenth and Eighteenth streets, where this accident is said to have occurred, there was a limb protruding from a tree across into the street or highway in such manner or in such a way as to make it dangerous to persons using that highway with vehicles, and that the city knew of the presence of the limb there, or could have known of it by the exercise of ordinary care, and that the plaintiff was injured by reason of the vehicle in which he was riding coming in contact with the limb in question, then the law is for the plaintiff, and you should so find, unless you should further believe from the evidence that the plaintiff, by negligence upon his part, contributed to cause or bring about the injury of which he complains, and that he would not have been injured but for his contributory negligence, if any there was.    (2) But unless you shall believe from the evidence that the limb of the tree in question was a dangerous

.obstruction to the use of the street by persons in vehicles, or that the city did not know of the obstruction, and could not have discovered it by the exercise of ordinary care, then the law is for the defendant, and you should so find, unless you shall believe that the limb had existed in its dangerous condition for such a length of time that the city or its officers knew, or could have ascertained, the dangerous condition of the limb with reference to people using the high-way, by the exercise of ordinary care." We think these instructions embody the law of the case.

The verdict is not excessive, because of the great suffering of the appellee and the permanent injury which he received. The injury practically deprives him of any means of making a living for himself and family.

. Judgment is affirmed.